**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**LISA P.,[1]**

**Plaintiff,**

**v.** **Civil Action 3:25-cv-276**
**Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

## OPINION AND ORDER

Plaintiff, Lisa P. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB"). This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 9), the Commissioner's Memorandum in Opposition (ECF No. 10), and the administrative record (ECF No. 8). For the reasons that follow, the Commissioner's non-disability determination is **AFFIRMED**.

## I. BACKGROUND

Plaintiff filed her DIB application in November 2022 alleging that she became disabled beginning April 27, 2022. (R. at 1818–19.) After Plaintiff's application was denied initially and on reconsideration, an Administrative Law Judge ("ALJ") held a video hearing on March 5, 2024, at which Plaintiff, who was represented by counsel, appeared and testified. (*Id*. at 1639–

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

70.) On April 25, 2024, the ALJ issued an unfavorable determination, which became final on April 21, 2025, when the Appeals Council denied Plaintiff's request for review. (*Id*. at 1614–38, 11–17.)

Plaintiff seeks judicial review of that unfavorable determination. She raises three related contentions of error. First, Plaintiff contends that the ALJ reversibly erred by determining that her migraines were a severe medically determinable impairment ("MDI") but then later inconsistently concluding that her headaches were secondary to other conditions under Social Security Ruling ("SSR") 19-4p. (Pl.'s Statement of Errors 5–8, ECF No. 9.) Plaintiff next contends that the ALJ reversibly erred by failing to properly determine if her migraines medically equaled Listing 11.02 under SSR 19-4p. (*Id*. at 8–14.) Plaintiff finally contends that the ALJ reversibly erred because his residual functional capacity ("RFC")[2] determination did not adequately account for her migraines. (*Id*. at 14–19.)

## II. THE ALJ'S DECISION

The ALJ issued the unfavorable determination on April 25, 2024. (R. at 1614–38.) He initially determined that Plaintiff met the insured status requirements through December 31,

---

[2] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations" "on a regular and continuing basis." 20 C.F.R. § 404.1545(a)(1), (b)–(c).

2027. (*Id.* at 1619.) At step one of the sequential evaluation process,[3] the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of April 27, 2022. (*Id.*) At step two, the ALJ found that Plaintiff had the following severe MDIs: obesity; fibromyalgia; migraine headaches; carpel tunnel syndrome; depression; an anxiety disorder; and attention deficit hyperactivity disorder (ADHD). (*Id.* at 1620.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

The ALJ then set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) subject to the following limitations: (1) occasional crouching, crawling, kneeling, stooping, balancing, and climbing of ramps and stairs; (2) no

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

> 1. Is the claimant engaged in substantial gainful activity?
>
> 2. Does the claimant suffer from one or more severe impairments?
>
> 3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
>
> 4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
>
> 5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

> climbing of ladders, ropes, and scaffolds; (3) no work around hazards such as unprotected heights or dangerous machinery; (4) frequent use of the hands for handling and fingering; (5) simple, routine, repetitive tasks; (6) occasional superficial contact with co-workers and supervisors (superficial contact is defined as able to receive simple instructions, ask simple questions, and receive performance appraisals but as unable to engage in more complex social interactions such as persuading other people or resolving superficial conflicts); (7) no public contact; (7) no fast paced work; (8) no strict production quotas; (9) very little, if any change in the job duties or the work routine from one day to the next and in which any changes could be explained.

(*Id*. at 1625–26.)

At step four, the ALJ relied on the VE's testimony to determine that Plaintiff was unable to perform any of her past relevant work. (*Id*. at 1631.) Relying again on the VE's testimony at step five, the ALJ determined that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform including the representative jobs of warehouse checker, office helper, and copy machine operator. (*Id*. at 1632–33.) Accordingly, the ALJ concluded that Plaintiff was not disabled as defined in the Social Security Act during the relevant time frame. (*Id*. at 1633.)

## III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Although this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Though the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y of Health & Hum. Serv.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV. ANALYSIS

Plaintiff's three contentions of error all concern the ALJ's evaluation of her migraines. As explained, she contends that the ALJ reversibly erred by: 1) inconsistently characterizing her migraine headaches as a severe MDI at step two but secondary to other conditions later in the determination; 2) failing to properly evaluate if her migraines medically equaled Listing 11.02 under SSR 19-4p; and 3) inadequately accounting for her migraines in her RFC. (Pl.'s Statement of Errors 5–19, ECF No. 9.) The Court agrees that the ALJ characterized Plaintiff's migraines inconsistently. As explained below, however, that inconsistency does not require remand.

### A. The ALJ's Inconsistent Characterization of Plaintiff's Migraines

Plaintiff correctly contends that the ALJ erred by characterizing her migraines as a severe MDI at step two but then later characterizing them as secondary to other conditions under SSR 19-4p. Nevertheless, in this case, that error does not require reversal.

At step two, an ALJ must determine if a claimant has an impairment that is medically determinable—*i.e.*, one resulting from anatomical, physiological or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. §§ 404.1520; 404.1521. Such "impairment[s] must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521. They must also meet the durational requirement in 20 C.F.R. § 404.1509, which provides that "[u]nless your impairment is expected to result in death, it must have lasted or be expected to last for a continuous period of at least 12 months." A plaintiff bears the burden of establishing that an impairment meets the duration requirement at step two. *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012).

If an ALJ determines that an impairment is a MDI, he must then determine if it is severe. 20 C.F.R. § 404.1520(a)(4)(ii). A "severe impairment" is defined as "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Step two is merely a threshold inquiry. If a claimant has at least one severe MDI, an ALJ must consider the limiting effects of all a claimant's MDIs, severe and not, when formulating his or her RFC. 20 C.F.R. § 404.1523.

SSR 19-4p supplies additional rules for the evaluation of headache disorders at step two. SSR 19-4p, 2019 WL 4169635 (S.S.A. Aug. 26, 2019.) Specifically, SSR 19-4p draws a

distinction between primary headache disorders, which are MDIs, and secondary headaches, which are not. The ruling provides as follows:

> We may establish only a primary headache disorder as an MDI. We will not establish secondary headaches (for example, headache attributed to trauma or injury to the head or neck or to infection) as MDIs because secondary headaches are symptoms of another underlying medical condition. We evaluate the underlying medical condition as the MDI. Generally, successful treatment of the underlying condition will alleviate the secondary headaches.

*Id*. at *5.

Here, the ALJ determined at step two that Plaintiff's migraine headaches were a severe MDI. (R. at 1620.)[4] Later, however, he explained that the "evidence of record [did] not support that [Plaintiff's] headache condition is a primary condition" and he instead determined that they were secondary to her prior brain surgery and shunt, fibromyalgia, and mental health conditions. (*Id*. at 1622–23.) Those findings are inconsistent under SSR 19-4p. If Plaintiff's headaches were secondary, they could not also constitute a MDI.

Plaintiff contends that this inconsistency requires remand, because it impacted the ALJ's analysis at step three. The Court does not agree. The inconsistency was harmless because at step three, the ALJ acted as if Plaintiff's headaches were a severe MDI and considered whether they met or medically equaled the appropriate listed impairment.

## B. The ALJ's Step Three Determination

Plaintiff contends that the ALJ erred by improperly evaluating her migraines at step three, This contention of error lacks merit.

---

[4] More precisely, the ALJ indicated that Plaintiff's migraine headaches were severe. (R. at 1620.) And although not all MDIs are severe, all severe impairments are MDIs.

**1. Applicable Step Three Standards**

At step three, an ALJ must compare a claimant's impairments to an enumerated list of medical conditions that the Social Security Administration has deemed "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). Each listed impairment describes "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. § 404.1525(c)(3). A claimant has the burden of showing that she has an impairment or combination of impairments that meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *Foster v. Halter*, 279 F.3d 348, 345 (6th Cir. 2001); 20 C.F.R. § 404.1520(a)(4)(iii). If claimant meets all criteria for a listing, she is disabled; otherwise, an ALJ must proceed to the next step in the sequential evaluation process. 20 C.F.R. § 404.1520(d)–(e).

SSR 19-4p again supplies additional rules for the evaluation of headache disorders at step three. A primary headache disorder is not a listed impairment. SSR 19-4p provides, however, that even though "[a] [p]rimary headache disorder is not a listed impairment . . . a primary headache disorder, alone or in combination with another impairments" may medically equal a listing. *Id.* at *7.

SSR 19-4p further provides that Listing 11.02, Epilepsy, is the most closely analogous listing for a primary headache disorder. SSR 19-4p states as follows:

> Epilepsy (listing 11.02) is the most closely analogous listed impairment for an MDI of a primary headache disorder. While uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures), and we may find that his or her MDI(s) medically equals the listing.
>
> Paragraph B of listing 11.02 requires dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment.

> To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, we consider: A detailed description from an AMS of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).
>
> Paragraph D of listing 11.02 requires dyscognitive seizures occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment, and marked limitation in one area of functioning. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02D, we consider the same factors we consider for 11.02B and we also consider whether the overall effects of the primary headache disorder on functioning results in marked limitation in: Physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself.

*Id*.

**2. The ALJ's Listing Analysis**

As explained, the ALJ determined that Plaintiff's headaches were a severe MDI at step two, but then later determined that she did not have a primary headache disorder. Despite this, the ALJ acted as if Plaintiff's headaches were a primary disorder and expressly considered if they met or medically equaled Listing 11.02 as provided in SSR 19-4p.

The ALJ wrote as follows:

> The severity of claimant's migraines does not meet or medically equal a listed impairment. Looking at sub listing 11.02 (epilepsy), claimant does not have tonic, clonic seizures that occur at least once a month for 3 consecutive months, despite adherence to prescribed treatment. Nor does she have dyscognitive seizures occurring at least once a week for at least 3 consecutive months, despite adherence to prescribed treatment. Claimant has headaches that are medically reduced with her medication and Botox injections. Claimant acknowledges that many of her headaches are stress induced as described below in the B criteria analysis. Claimant is treated with medication for her depression and anxiety as set forth below, but claimant has no history of other mental health treatment or counseling. As set forth

> below, claimant does not have a marked limitation in her physical functioning or any of the B criteria discussed below. Claimant does not equal or meet the criteria of this listing.

(R. at 1620.)

Plaintiff contends that the ALJ's determination was flawed. She contends that the ALJ determined that she did not meet Listing 11.02 solely because she did not have the type and frequency of seizures that satisfied its requirements. (Pl.'s Statement of Errors 10–11, ECF No. 9.) And indeed, the ALJ made that determination. (R. at 1620.) But as the discussion above demonstrates, the ALJ also determined that Plaintiff did not medically equal Listing 11.02 because her headaches were reduced by medication and Botox injections, and because many of her headaches were stress-induced. (*Id.*)

The ALJ did not end the inquiry there. As part of his step three analysis, the ALJ further explained that Plaintiff did not meet the criteria described in SSR 19-4p. He wrote as follows:

> Social Security regulations require that a claimant meet specific criteria set forth in SSR 19-4p. In March 2018, claimant had surgery to remove a pseudotumor cerebri and a ventriculoperitoneal shunt was placed in her brain (4F at 13). At an office visit on June 14, 2022, claimant was still having significant headaches (4F at 14). Her shunt level was adjusted (Id.). Claimant reported light sensitivity and her right pupil being larger than her left pupil. However, upon examination, both pupils were equal and her physical examination was normal (4Fat 16). An MRI of the brain was normal and showed no evidence of hydrocephalus or any acute intracranial disease (4F at 18). Lab work showed no vitamin or mineral deficiencies (3F).
>
> As of November 9, 2022, claimant reports that she drinks three 8 ounce caffeinated drinks per day (2F at 23). She reports headaches for approximately 17 days out of a month (2F at 23). She reports no insomnia. She has been ordered to use Nurtec in place of Tylenol. She reported that her Botox treatment was helpful in reducing the frequency and severity of her migraine, but she reports headaches from personal stress involving the health of family members and her pet (2F and 7F at 13 and 19). Increasing her prescription for Lyrica for her nerve pain has also been helpful (2F at 23). She also reports that the shunt adjustment from June of 2022 has helped (2F at 23). Claimant was ordered to discontinue using Tylenol in order to avoid rebound headaches (2F at 24).

> In December 2022, claimant had a physical examination. She complained of blurred vision, but denied any eye pain or double vision (1F at 6). Claimant reported headaches, focal weakness, and shortness of breath, but denied any malaise (1F at 6). Claimant had 20/20 vision in both eyes. An in-depth eye examination was normal (1F at 7). Claimant had a diagnostic lumbar puncture. The resulting lab work supported that no bacterial, cryptococcal, or viral infection was causing her headaches; however, it did show a high level of lymphocytes at 96% (1F at 10 and 16). Throughout 2023, claimant continues to report headaches, but she appears to indicate the primary trigger is stress related (8F at 5, 15, and 21; see also 1F-10F). There is no medical records supporting mental health treatment such as therapy or behavior modification, only for medication prescribed to treat depression and anxiety. The evidence of record does not support that claimant's headache condition is a primary headache condition, but rather it is secondary to her surgery, but successfully treated with medication, Botox, and management of her shunt. Also, it appears secondary to her fibromyalgia that appears to be appropriately managed through medication. Finally, it also appears to be secondary to claimant's mental health condition and treated with mediation (*sic*), but not yet addressed or managed through mental health therapy or behavior modification. Therefore, claimant's migraine headache condition does not meet the criteria set forth under this regulation.

(*Id*. at 1622–23.)

As this additional discussion demonstrates, the ALJ considered the nature, severity, and frequency of Plaintiff's migraines; associated symptoms; treatments; and Plaintiff's response to those treatments. (*Id*.) After considering these factors, the ALJ determined that Plaintiff's headaches did not meet the criteria in SSR 19-4p for medically equaling Listing 11.02 under SSR 19-4p.

Substantial evidence supports the ALJ's determination. The ALJ explained that Plaintiff's headaches were responsive to treatments, including adjustments to her shunt. And the record reflects that Plaintiff had a shunt placed in her head in 2018 to relieve high pressure. (R. at 1927.) Although Plaintiff reported daily headaches to treatment providers after her alleged April 27, 2022 disability onset date, she also reportedly experienced some relief after her shunt was adjusted in June 2022. (*Id*. at 1962–63.)

The ALJ also explained that Plaintiff experienced benefits from Botox injections. The record supports that explanation as well. Plaintiff apparently began receiving Botox treatments in June 2022. (*Id*. at 1233.) In August and September 2022, Plaintiff reported that her first Botox injection was "very helpful" in reducing the frequency and severity of her migraines, but she had been very stressed by family circumstances, and she hoped it would be even more helpful after the stress in her life calmed down. (*Id*. at 1224, 1229.) Thereafter, Plaintiff regularly reported a decrease of seven or more headaches per month. (*Id*. at 1210, 1196, 1185, 2188, 1169.) Plaintiff also regularly reported that she had no major side effects from Botox, she believed it worked to prevent daily migraines, lessened the severity of her headaches, and that she was "very pleased" with how it was helping with her migraines. (*Id*. at 1204, 1190, 1179, 1163.) One of Plaintiff's providers also wrote that Plaintiff had experienced "significant improvement" since starting Botox. (*Id*. at 1174, 1164.)

As the ALJ also correctly explained, the record additionally reflects that Plaintiff experienced benefits from other medications. Plaintiff was prescribed Emgality to address her headaches; the record indicates that it was somewhat helpful because it lessened their severity. (*Id*. at 1204, 2140.) The record also routinely indicates that Inderal, a beta blocker used to prevent migraines, was helpful to Plaintiff. (*Id*. at 1164, 1174, 1180, 1191, 1215.)

Plaintiff does not refute these record-based explanations. Instead, she relies on contrary evidence. (Pl.'s Statement of Errors 11–12, ECF No. 9.) But where substantial evidence supports an ALJ's determination, the Court will affirm it even if other evidence could support a contrary result. *Emard*, 953 F. 3d 849.

In short, the Court finds no reversible error at step three even though the ALJ inconsistently characterized Plaintiff's headaches as severe MDIs and secondary to other

conditions. Regardless of that characterization, the ALJ considered if they met or medically equaled Listing 11.02 pursuant to SSR 19-4p. And substantial evidence supported his determinations.

**C. The ALJ's RFC Determination**

Plaintiff additionally contends that the ALJ erred by failing to include in her RFC limits that accommodated her migraine headaches. This contention of error also lacks merit.

When assessing an RFC an ALJ must consider the limiting effects of all a claimant's impairments, severe and not. 20 C.F.R. § 404.1545(e). SSR 19-4p likewise directs an ALJ to consider the limiting effects of headache symptoms when assessing an RFC. 2019 WL 4169635, at *7.

Plaintiff contends that the ALJ failed to include any migraine-related limits in her RFC. (Pl.'s Statement of Errors 16, ECF No. 9.) Plaintiff is incorrect. The ALJ expressly stated that he included restrictions against climbing ladders, ropes, and scaffolds in Plaintiff's RFC because of her obesity, fibromyalgia, and migraine headaches. (R. at 1630.) Thus, the ALJ did not ignore Plaintiff's migraines when he assessed her RFC.

Plaintiff also contends that the ALJ should have included in her RFC off-task or absence limits to accommodate her migraines. (Pl.'s Statement of Errors 16–19, ECF No. 9.) But the ALJ explicitly considered Plaintiff's ability to work a regular schedule, writing as follows:

> The claimant's medical problems include a history of migraine and stress related headaches related to a history of pseudotumor cerebri. The claimant experienced intracranial hypertension, headaches, and had a shunt placed in her head in 2018, well prior to the onset date in April of 2022 (1F; 4F; 5F). The shunt appears to be functioning well and she has had no complications. The claimant has had some Botox injections at three-month intervals for her headache complaints but these appear to have been effective along with oral headache medications such as Nurtec and Inderal (2F, 7F, and 8F). Her headaches appear reasonably well controlled with these measures and would not preclude the claimant from maintaining a dependable work schedule.

(R. at 1628.)

As this discussion demonstrates, the ALJ determined that Plaintiff's headaches would not preclude a regular work schedule because they were well controlled with medications and Botox injections. As explained earlier, substantial evidence supports that determination. Plaintiff regularly reported that she believed Botox worked to prevent daily migraines, it lessened the severity of her headaches, and she was "very pleased" with how it was helping with her migraines. (*Id*. at 1204, 1190, 1179, 1163.) Other medications were also noted to be helpful. (*Id*. at 1204, 2140, 1164, 1174, 1180, 1191, 1215.)

Plaintiff again fails to refute these record-based reasons for finding that she could maintain a dependable work schedule and instead relies on contrary evidence. (Pl.'s Statement of Errors 16–17, ECF No. 9.) When substantial evidence supports an ALJ's determination, however, the Court will affirm it even if other evidence could support a contrary result. *Emard*, 953 F. 3d 849.

## V. CONCLUSION

In sum, the ALJ erred by characterizing Plaintiff's migraine headaches as both a severe MDI and as secondary to her other conditions. That inconsistency was, however, harmless. The ALJ proceeded as if Plaintiff's headaches constituted a severe MDI of a headache disorder and considered if they met or medically equaled Listing 11.02 under SSR 19-4p. The ALJ also considered and accounted for Plaintiff's migraines when assessing her RFC. The record substantially supported the determinations the ALJ made in the process.

Accordingly, the Court **AFFIRMS** the Commissioner's non-disability determination and **OVERRULES** Plaintiff's Statement of Errors.

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE